## Fitzwater v. Gouldin

*James F. McBride,* for plaintiffs.

*J. David Smith,* for defendants Judith A. Gouldin, M.D. and Williamsport Hospital.

*Joseph Lach,* for defendant William G. Hamm, M.D.

RAUP, *P.J.,* March 14, 1988—Before the court is plaintiffs' motion to preclude expert testimony.

On July 23, 1981, plaintiffs filed a complaint alleging medical malpractice against defendants. The complaint alleges that plaintiff consulted his family physician in April 1980, complaining of heartburn with pain and numbness in his left arm. The family physician referred plaintiff to defendant Dr. Gouldin, a certified internist who has a sub-speciality in nuclear medicine. Dr. Gouldin treated the plaintiff for hyperthyroidism. On May 10, 1980, plaintiff returned to the emergency room at the Williamsport Hospital complaining of the same symptoms. Defendant Dr. Hamm examined plaintiff and discharged him. Later that evening, plaintiff returned to the hospital, where an electrocardiogram was conducted and showed the occurrence of a myocardial infarction. The complaint asserts that at that time, Dr. Joseph Calder became plaintiff's treating physician and continues to act in that capacity.

During discovery, counsel for the defendants Williamsport Hospital and Dr. Gouldin informed plaintiff's counsel by letter that Dr. Calder had been retained as an expert on behalf of defendants. Plaintiffs then filed a motion to preclude Dr. Calder's expert testimony and to prohibit defense counsel from engaging in ex parte communication with Dr. Calder.

It is plaintiffs' position that a treating physician owes a patient a duty to assist the patient in litigation, and to refuse assistance to the patient's opponent. Plaintiff relies on *Alexander v. Knight,* 25 D. & C. 2d 649 (1961), affirmed, 197 Pa. Super. 79, 177 A.2d 142 (1962). In *Alexander,* a medical doctor, hired by defense attorneys, interviewed the plaintiff's treating physician. While the court did

refer to a physician's "duty to aid the patient in litigation," it is clear that this is merely dicta. As the court stated at the outset of its discussion of this aspect of the case:

*"We do not consider the entire Ezickson matter' as significant in this case,* but we deem it advisable to briefly refer to our view of this incident." (emphasis supplied.)

Defendants contend that 42 Pa. C.S. §5929 permits Dr. Calder's testimony. That section states:

"No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."

Defendants' position is that Dr. Calder's testimony would not "tend to blacken the character" of plaintiff, and further more, that section 5929 permits the testimony because plaintiff's action is for damages on account of personal injuries. This same issue arose in *Rost v. Kraus,* Civil Action no. 83-00144, Lycoming County (Wollet, *J.*) (1985). The court there held that section 5929 would not preclude testimony of plaintiff's treating physician. As Judge Wollet stated:

"[T]his action is one for damages on account of · personal injuries. Moreover, the information or testimony which the defendants seek does not 'tend to blacken the character' of the plaintiff's decedent. Therefore, the testimony of Drs. Bair and Dale regarding their examination or treatment of the

decedent is not prohibited by the physician/patient privilege as enunciated in section 5929.

. . .

"The court finds that the case law (including *Alexander v. Knight, supra*) cited by the plaintiff does not establish such a separate physician/patient duty or privilege. Rather, we agree with the defendants that section 5929 affords the sole and exclusive physician/patient privilege in Pennsylvania. To the extent that the dicta in *Alexander v. Knight* is contrary to our conclusion, we respectfully disagree that such a view of the physician's duty would preclude the admission of testimony sought by the defendant in this case. To rule otherwise would severely limit the defendants, as well as the trier of fact, from exploring facts necessary to the appropriate resolution of this case." *Rost, supra.*

Based on Judge Wollet's reasoning in *Rost, supra,* plaintiffs' motion to exclude Dr. Calder's testimony is denied.

### ORDER

And now, March 14, 1988, for the reasons set forth in the foregoing opinion, plaintiffs' motion to exclude expert testimony is denied.